# SETTLEMENT AGREEMENT & RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff Angela Lee ("Named Plaintiff"), individually and on behalf of the putative 29 U.S.C. § 216(b) collective action members ("Collective Members") that she represents, and Defendants Multi-Color Corporation and WS Packaging Group, Inc. ("Defendants") (collectively, the "Parties").

## RECITALS

**WHEREAS**, Named Plaintiff filed a complaint in the Eastern District of Wisconsin (Green Bay Division) captioned *Lee, et al. v. Multi-Color Corporation, et al.,* Case No. 23-cv-0216, ("Lawsuit"), alleging that Defendants failed to compensate Plaintiff and all other hourly-paid, non-exempt employees for all hours worked and/or work performed each workweek, including at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek, by failing to compensate said employees for all pre- and post-shift hours worked.

**WHEREAS**, the purpose of this Agreement is to settle fully and finally the claims raised in the Lawsuit by Angela Lee (the "Named Plaintiff") as well as those hourly-paid, non-exempt employees whom Named Plaintiff seeks to represent (the "Collective Members"); and

**WHEREAS**, *bona fide* disputes and controversies exist between the Named Plaintiff and the Collective Members and the Defendants as to the allegations in the Lawsuit. Defendants deny all of the allegations asserted in the Lawsuit, and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted therein; nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement; and

**WHEREAS**, Plaintiff's Counsel, Walcheske & Luzi, among other things, analyzed and evaluated the merits of the claims made against Defendants in the Lawsuit, conducted interviews with the Named Plaintiff, engaged in both formal and informal exchange of information with Defendants' Counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., obtained and reviewed documents relating to Defendants' compensation policies and practices, and analyzed payroll data and timekeeping data, and, based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Lawsuit, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Named Plaintiff and those Collective Members she represents.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Lawsuit on the following terms and conditions.

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "Collective Members" or "FLSA Opt-Ins" means those Plaintiffs who filed a Consent to Join form with the Court on July 16, 2024 (ECF No. 28), as identified in Exhibit A, attached.

1.2 "Complaint" means the Complaint dated February 15, 2023, that was filed in the United States District Court for the Eastern District of Wisconsin and captioned *Lee v. Multi-Color Corporation, et al.*, Case No. 23-cv-0216.

1.3 "Court" means the United States District Court for the Eastern District of Wisconsin (Green Bay Division).

1.4 "Defendants" mean Multi-Color Corporation and WS Packaging Group, Inc.

1.5 "Defendants' Counsel" means Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

1.6 "Employer Payroll Taxes" means all taxes and withholdings an employer is required to withhold arising out of or based upon the payment of employment/wage compensation applicable to the allegations of the Complaint and arising under this Agreement, including but not limited to FICA, FUTA, and SUTA obligations, which are not included in the Gross Settlement Amount.

1.7 "FLSA Claim" means all claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* raised on behalf of the putative Collective Members in the Lawsuit.

1.8 "FLSA Collective" shall be comprised of all Collective Members.

1.9 "Gross Settlement Amount" means Thirty-One Thousand Dollars and Zero Cents ($31,000.00) which is the maximum amount that Defendants have agreed to pay to fully resolve and settle the Lawsuit, and which includes any and all amounts to be paid to Plaintiffs, any claim for attorneys' fees and costs approved by the Court, and any Court-approved Service Awards. Defendants will not be required to pay any more than the Gross Settlement Amount, except for the Employer Payroll Taxes.

1.10 "Named Plaintiff" shall mean Angela Lee.

1.11 "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) attorneys' fees and costs for Plaintiff's Counsel; and (b) Court-approved Service Award for Named Plaintiff.

1.12 "Order Granting Approval of Settlement" or "Approval Order" means an order to be entered by the Court which gives final approval to the Settlement and this Agreement, and enters Final Approval, dismissing the Lawsuit with prejudice.

1.13 "Parties" collectively means the Named Plaintiff, Angela Lee, individually and on behalf of the FLSA Collective she purports to represent, and the Defendants Multi-Color Corporation and WS Packaging Group, Inc.

1.14 "Plaintiffs" means any and all Collective Members, including Named Plaintiff, Angela Lee.

**1.15** "Plaintiffs' Counsel" means Walcheske & Luzi, LLC.

**1.16** "Releasees" mean Multi-Color Corporation and WS Packaging Group, Inc. and their predecessors and successors, parents, subsidiaries, divisions, and affiliates, and all of each such entity's officers, directors, shareholders, managers, members, claimants, insurers, agents, attorneys and assigns, in their individual and representative capacities.

**1.17** "Settlement," "Settlement Agreement," or "Agreement" means this writing which the Parties understand and agree sets forth all material terms and conditions of the compromise and settlement of all claims between them regarding the Lawsuit, and which is subject to Court approval.

**1.18** "Settlement Effective Date" means a date which is fourteen (14) days after the entry of the Final Approval Order in the Lawsuit.

**1.19** "Settlement Check" means the check issued to each of the Plaintiffs for their share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.20** "Settlement Check Void Date" means the 120-day period that a Collective Member has to sign and cash a Settlement Check after it is received as defined in Section 2.4.

**1.21** "Settlement Payments" means the settlement payment amounts attributed to each of the Plaintiffs, in accordance with Section 3.4 for the amounts reflected therein.

**1.22** "WWPCL Claim" means all claims pursuant to Wisconsin's Wage Payment and Collection Laws ("WWPCL"), collectively WIS. STAT. §§ 109.01 *et seq*., WIS. STAT. §§ 103.001 *et seq*., and WIS. ADMIN. CODE DWD §§ 274.01 *et seq*. raised in the Lawsuit.

## 2. JUDICIAL APPROVAL AND NOTICE TO PLAINTIFFS

**2.1** Binding Agreement. This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement and dismissal of the Lawsuit.

**2.2** Approval of Settlement.

(A) By January 6, 2025, Plaintiffs' Counsel shall file a Joint Motion for Settlement Approval ("Approval Motion") seeking final approval of the Agreement. Plaintiffs' Counsel will provide Defendants' Counsel with a draft of the Approval Motion for review and comment within as soon as practicable after the execution of this Agreement. With the Approval Motion, Plaintiffs' Counsel also will file this Agreement. Among other things, the Approval Motion will ask the Court for:

1. Final approval of the settlement memorialized in this Agreement as a fair, reasonable, and adequate resolution of a *bona fide* wage dispute;

2. Final certification of this case as a collective action under 29 U.S.C. § 216(b) for the purpose of settlement;

3. Appointment of Named Plaintiff, Angela Lee, as Collective Representative;

4. Declaring the Agreement to be binding on the Parties;

5. Indicating the amount of the Service Award to be paid to Named Plaintiff, Angela Lee, consistent with the Settlement;

6. Indicating the amount of the Attorneys' Fees and Costs to be paid to Plaintiffs' Counsel, consistent with the Settlement; and

7. Dismissing with prejudice the Collective Members' released FLSA and WWPCL claims.

(B) Entry of Order Approving Settlement.

If this Agreement is finally approved by the Court, a Final Order Approving Settlement pursuant to Federal Rule of Civil Procedure 54(b) shall be entered as requested in Section 2.2 (A) of this Agreement.

2.3 Within fourteen (14) days after the Final Approval Order is entered, Defendants will deliver Settlement Checks, less all applicable withholdings as described in Section 3.4 below, to Plaintiffs' Counsel for distribution to Plaintiffs.

2.4 Once delivered to Plaintiffs' Counsel, the Settlement Checks will be forwarded to all Plaintiffs. Settlement Checks issued pursuant to this Agreement shall expire upon the Settlement Check Void Date, which is one hundred twenty (120) days after issuance. After the Settlement Check Void Date, Defendants will issue a stop payment order on all uncashed or returned checks. In the event that, before the close of the Settlement Check Void Date, Plaintiffs' Counsel becomes aware that a Collective Member did not receive the Settlement Check, or if a Collective Member reports a lost or destroyed Settlement Check, or otherwise requests reissuance of his or her Settlement Check prior to the Settlement Check Void Date, Plaintiffs' Counsel shall so advise Defendants' Counsel and Defendants shall issue a stop payment order on the original check and issue a new check. In no event shall a Collective Member be issued a replacement check until any prior check sent to them has been cancelled.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Payments.

(A) Defendants agree to pay up to the maximum Gross Settlement Amount, which shall fully resolve and satisfy any and all amounts to be paid to the Plaintiffs, any Court-approved Service Awards as more fully set forth herein, and any Court-approved attorneys' fees and costs. Defendants will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

(B) Any portion of the Gross Settlement Fund that is unclaimed by Plaintiffs who do not timely sign and cash a Settlement Check, shall remain with the Defendants. There shall be no reallocation of unclaimed settlement funds to Plaintiffs.

(C) The Collective Members will share in the Net Settlement Fund as reflected in Exhibit A.

**3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of up to Twenty-Five Thousand Dollars and Zero Cents ($25,000.00) from the Gross Settlement Amount as an award of attorneys' fees and reasonable actual case-related costs and expenses. Defendants shall not oppose these requests. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source incurred in relation to this case.

(B) The substance of Plaintiffs' Counsel's application for attorneys' fees and costs, if any, is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs, if any, shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid to Plaintiffs' Counsel and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall remain with the Defendants. Notwithstanding anything else in this Section 3.2, the Court's grant of the Approval Motion and entry of final judgment in the Lawsuit are preconditions to payment of attorneys' fees and costs.

**3.3 Service Award.**

(A) In their Approval Motion, Plaintiffs' Counsel will apply to the Court for a Service Award payable to the Named Plaintiff from the Gross Settlement Amount for the services she rendered to the Collective Members. Plaintiffs' Counsel will request payment of One Thousand and Five Hundred Dollars and Zero Cents ($1,500.00) for the Named Plaintiff. Defendants agree to and shall not oppose this request.

(B) This Service Award and any requirements for obtaining any such payment are separate and apart from, and in addition to, the Named Plaintiff's recovery from the Net Settlement Fund as a Collective Member. The substance of the Named Plaintiff's application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. Any Service Award money not approved by the Court shall remain with the

Defendants. Notwithstanding anything else in this Section 3.3, the Court's grant of the Approval Motion and entry of final judgment in the Lawsuit are preconditions to payment of the Service Award.

**3.4** **Distribution of Payments.**

(A) The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorneys' fees and costs and to Plaintiff for any Court-approved Service Award will be submitted to Plaintiffs' Counsel by Defendants within fourteen (14) days after the Court has approved such payments and Plaintiffs' Counsel has provided Defendants' Counsel with a fully executed IRS Form W-9 for Plaintiffs' Counsel.

(B) The Settlement Checks and Individual Payment will be mailed to Plaintiffs by Plaintiffs' Counsel in accordance with Section 2.4, above.

(C) The allocation to Plaintiffs for their Settlement Payments will be made from the Net Settlement Fund in accordance with Section 3.1 (C), above.

(D) Tax Characterization of Payments.

1. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and be reported to the Internal Revenue Service ("IRS") and to Plaintiffs' Counsel on an IRS Form 1099.

2. Payment of a Service Award pursuant to Section 3.3 shall be treated as alleged wage relief and shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the Named Plaintiff under the Named Plaintiff's name and Social Security number on an IRS Form W-2.

3. The payments to each Collective Member shall be treated as alleged wage relief. These payments shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the IRS and the payee under the payee's name and Social Security number on an IRS Form W-2. Defendants shall withhold payroll taxes and other lawful withholdings and will issue each Plaintiff an IRS Form W-2. Defendants may use supplemental withholding, pursuant to IRS Publication 15 (Circular E) (2022) and Wisconsin Department or Revenue Publication W-166 (10/21), for any individual receiving a Settlement Payment under this Agreement.

4. The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Plaintiff receiving a Settlement Check or Service Award. The Parties and their Counsel make no representations as to the taxability of any portions of the settlement payments to any Plaintiffs, the payment of any costs or award of attorneys' fees, or any

payment to the Plaintiffs. Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid or received hereunder, nor will it be relied upon as such.

5. None of the amounts paid to the Plaintiffs shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendants, including for purposes of any bonus of any kind.

**4. RELEASE OF CLAIMS**

**4.1** <u>Release By Plaintiffs.</u> Conditioned upon the Court's entry of the Final Approval Order, and in exchange for the monetary consideration recited in this Agreement, Named Plaintiff hereby agrees to dismiss the Lawsuit with prejudice, and each Collective Member, including Named Plaintiff, will waive, release, and forever discharge the Releasees from: any and all claims, demands, suits, causes of action, liabilities, obligations, debts, losses, agreements, contracts, controversies, damages, costs, attorneys' fees, and expenses of any kind or nature, whether express or implied, known or unknown, which exist or may exist as of the Effective Date of this Agreement, including but not limited to those related to or for compensation of any kind, including but not limited to wages, commissions, bonuses, and overtime, that accrued while employed at Defendants, relating back to the full extent of the applicable statute of limitations and continuing through the entry of the Final Approval Order, including, all state, federal, contract, and common law claims for unpaid minimum, agreed-upon, and overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et. seq.*, and Wisconsin's Wage Payment and Collection Laws ("WWPCL"), Wis. Stat. § 109.01 *et seq.*, Wis. Stat. § 104.01 *et seq.*, Wis. Stat. § 103.001 *et seq.*, Wis. Admin. Code § DWD 274.01 *et seq.*, and Wis. Admin. Code § DWD 272.001 *et seq.*

**4.2** <u>Exceptions</u>. Notwithstanding the general release in 4.1, supra, nothing in this Agreement is intended to waive or release any claims: (i) for unemployment or workers' compensation; (ii) for vested rights under ERISA-covered employee benefit plans as applicable on the date Plaintiffs sign this Agreement; (iii) that are brought to enforce this Agreement; and (v) that cannot be released by private agreement. Additionally, nothing in this Agreement prevents Plaintiffs, including all Collective Members, from filing a charge or complaint with or from participating in an investigation or proceeding conducted by any federal, state or local agency charged with the enforcement of any laws, although by signing this Agreement, Plaintiffs, including all Collective Members, expressly agree to waive their rights to individual relief based on claims asserted in any such charge or complaint.

**5. VOIDING THE AGREEMENT**

**5.1** If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Final Approval Order in substantially the form submitted by the Parties, or fails to enter the Final Approval Order, unless the Parties agree in writing, this Agreement shall be void

*ab initio* except as to the provisions expressly stated in this Agreement to survive, and Defendants shall have no obligations to make any payments under the Settlement or this Agreement.

**5.2** A decision of the Court declining to approve any material condition of this Agreement which effects a fundamental change of the Parties' agreement (except as to any payment under Sections 3.2, 3.3, and 3.4), including but not limited to requiring that Defendants pay any amount in excess of the Gross Settlement Amount except as described herein, shall render the entire Settlement voidable and unenforceable as to all Parties at the option of either Party. Each Party may exercise its option to void this Settlement by giving notice, in writing, to the other and to the Court within fifteen (15) days of the Court's disapproval of any material condition, but in no event at any time after the Approval Order.

**5.3** In the event that the Court fails to approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement and/or (b) either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the FLSA Claims and WWPCL Claims will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

**6. PARTIES' AUTHORITY**

**6.1** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement to resolve the claims at issue and to bind the Parties (including all Plaintiffs, through their representation by Named Plaintiff and Plaintiffs' Counsel) hereto to the terms and conditions hereof.

**7. MUTUAL COOPERATION**

**7.1** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and Defendants' Counsel, take all necessary steps to secure the Court's approval of this Agreement.

**8. NOTICES**

**8.1** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly

given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs:

Mr. David M. Potteiger
Walcheske & Luzi, LLC
235 N. Executive Drive, Suite 240
Brookfield, WI 53005
Telephone: (262) 780-1953
E-Mail: dpotteiger@walcheskeluzi.com

To Defendants:

Mr. Keith E. Kopplin
Ogletree, Deakins, Nash, Smoak & Stewart, PC
1243 North 10th Street, Suite 200
Milwaukee, WI 53205
Telephone: (414) 239-6406
E-mail: keith.kopplin@ogletree.com

**9.  NO ADMISSION OF LIABILITY**

**9.1**  Defendants deny all of the allegations made by Named Plaintiff in the Lawsuit and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Complaint. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement. Nothing in this Agreement is intended or will be construed as an admission of liability or wrongdoing by Defendants.

**9.2**  Plaintiffs agree and acknowledge that this Agreement is not, and shall not be alleged by them, or construed by anyone, to be an admission of any violation of any federal, state, or local statute, ordinance, or regulation, of the common law of any jurisdiction, of any duty owed by Defendants and/or the Releasees to Plaintiffs, or of any wrongdoing by Defendants and/or the Releasees whatsoever and that the sole purpose of this Agreement is to avoid the cost of further litigation.

**10.  INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

**10.1**  Parties' Agreement Regarding Non-Admissibility in Any Other Proceeding. Nothing in this Agreement, nor any action taken in implementation thereof, nor any statements, discussion, or communications exchanged in negotiations leading to the Agreement, are intended by the Parties to, nor shall they, constitute, be introduced, be used, or be admissible in any way in other action, or in any other judicial, arbitral, administrative, investigative, or other proceeding whatsoever kind or nature as evidence of any violation of the common law of any jurisdiction; any federal, state, or local law, statute, ordinance, regulation, rule or executive order; or any obligation or duty at law or in equity. Notwithstanding the foregoing, the Agreement may be used by the Parties in any

proceeding to enforce the Agreement or in defense of all claims released or barred by this Agreement.

10.2 Further Acts. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

10.3 No Assignment. Plaintiffs' Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the FLSA Claim, WWPCL Claim, or any related action, and any attempt to do so shall be of no force or effect.

10.4 Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties.

10.5 Binding Effect. This Agreement shall be binding upon the Parties and, with respect to the Plaintiffs, their spouses, children, representatives, heirs, Administrators, executors, beneficiaries, conservators, attorneys and assigns.

10.6 Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

10.7 Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.8 Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

10.9 Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Wisconsin, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

10.10 Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

10.11 Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties,

and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.12  Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

10.13  Non-Publication. Plaintiffs' Counsel and Plaintiffs agree to make no public comment, communications to the media, or any form of advertising or public announcement, including social media, regarding this settlement.

10.14  Facsimile, Electronic and E-mail Signatures. Any Party may execute this Agreement by signing or by causing its counsel to sign, or by e-signature on the designated signature block below and transmitting that signature page via facsimile, e-mail, or other electronic means to counsel for the other Party. Any signature made and transmitted by facsimile, e-signature, or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile, e-signature or e-mail.

10.15  Signatories. This Agreement is valid and binding if signed by Defendants' authorized representative and Named Plaintiff.

10.16  No Press Release or Advertisement of Agreement. Neither Named Plaintiff nor Plaintiff's Counsel will release a public statement regarding this Agreement, including but not limited to, through a press release or any other publicized written document or advertisement. If Named Plaintiff and/or Plaintiff's Counsel receive a request from a member of the press to comment on the Agreement, they will decline to comment.

10.17  No Knowledge of Other Claimants or Claims. Plaintiffs' Counsel represents that they are presently not aware, nor have they been contacted by, any other individuals asserting claims against Releasees up to the date of Plaintiffs' execution of this Agreement.

10.18  Ratification. Plaintiffs hereby authorize and ratify all that their attorneys may have done or may do in effectuation of this Agreement, consistent with the terms of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year set forth below:

**ANGELA LEE**

_____

Date: _____

**MULTI-COLOR CORPORATION**

By: _____

Title/Date: Chief Legal Officer; 12/18/24

**WS PACKAGING GROUP, INC.**

By: _____

Title/Date: Chief Financial Officer; 12/18/24

87142359.v1-OGLETREE

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year set forth below:

**ANGELA LEE**

*Angela Lee*
Angela Lee (Jan 2, 2025 08:58 CST)

Date: 01/02/25

**MULTI-COLOR CORPORATION**

By: _____

Title/Date: _____

**WS PACKAGING GROUP, INC.**

By: _____

Title/Date: _____

87142359.v1-OGLETREE

| Employee Number | Employee Display Name | Street Address | City | State | Zip | Settlement Payment |
|---|---|---|---|---|---|---|
| 195166 | Tschirgi, Catherine A | 1312 Pinehurst Lane | Neenah | WI | 54956 | $209.32 |
| 195075 | Jovanovich, Michael | 1075 Gay Drive | Neenah | WI | 54956 | $274.68 |
| 195083 | Knutson, Lori | 419 E James Street | Appleton | WI | 54915 | $217.33 |
| 195122 | Nettekoven, Jeff | 1261 Honeysuckle Lane | Neenah | WI | 54956 | $240.84 |
| 195058 | Hedtke, Connie | 665 Fair Oaks Drive | Neenah | WI | 54956 | $195.97 |
| 195063 | Heinz, Michael | 8427 Pioneer Rd | Larsen | WI | 54947 | $25.00 |
| 195062 | Hein, Scott | N8437 Highway 26 | Eldorado | WI | 54932 | $241.16 |
| 195099 | Lichtenberg, John | 701 Jefferson Street | Menasha | WI | 54952 | $25.00 |
| 195011 | Braun, Timothy | 608 Quarry Lane | Neenah | WI | 54956 | $25.00 |
| 195096 | Lee, Angela M | 671 Western Ave #104 | Neenah | WI | 54956 | $743.69 |
| 195276 | Myers, Timothy | 1123 Taft Street | Little Chute | WI | 54140 | $101.42 |
| 195309 | Remmel, Bonnie | 4240 W Breezewood Lane | Oshkosh | WI | 54904 | $192.49 |
| 195436 | Ruedinger, Christan | 3887 Crab Apple Ln. | Oshkosh | WI | 54904 | $25.00 |
| 195625 | Kitchenmaster, Cale L | 1703 Roosevelt Street | Little Chute | WI | 54140 | $157.79 |
| 195688 | VanDynHoven, Jeannine K | 1484 Home Ave | Menasha | WI | 54952 | $174.39 |
| 195700 | Knop, Eric N | 1447 Tullar Rd apt 8 | Neenah | WI | 54956 | $170.22 |
| 411651 | Udelhofen, Jeffrey A | 106 Briar Drive | Neenah | WI | 54956 | $174.34 |
| 412644 | Earl, Dorothy R | 1616 Schaefer Cir | Appleton | WI | 54915 | $25.00 |
| 412816 | McNeff, Donna | 1333 Shootingstar Dr. | Neenah | WI | 54956 | $113.54 |
| 412983 | Swan, Justin | 5400 Wildwood Ct | Winneconne | WI | 54986 | $297.63 |
| 413525 | Michels, David B | 1920 Evans St. | Oshkosh | WI | 54901 | $139.66 |
| 413777 | Thomma, Beverly | 704 E Frontage Rd | Little Suamico | WI | 54141 | $25.00 |
| 411970 | Elliott, Joyce M | W7724 State Highway 54 | SHIOCTON | WI | 54170 | $144.80 |
| 414463 | Linsmeier, Zachary A | 1111 Witzel Ave. | Oshkosh | WI | 54902 | $170.69 |
| 414708 | Corbisier, Corey | 1403 Green Valley Rd | Neenah | WI | 54956 | $255.73 |
| 415088 | Heffernan, Jonathan | 1218 jackson st | Oshkosh | WI | 54901 | $109.32 |
| 415843 | Van Groll, Aaron | 1103 W 8th Ave | Appleton | WI | 54914 | $25.00 |